RALPH BARTEL, APPELLANT, v. JOSEPH O'GRADY, WARDEN, APPELLEE.

292 N. W. 383

FILED MAY 24, 1940. No. 30807.

*Ralph Bartel, pro se.*

*Walter R. Johnson, Attorney General,* and *George W. Ayres, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

Petitioner has appealed from an order of the district court, denying his right to a release from the state penitentiary, on habeas corpus.

He was sentenced to the penitentiary in 1931, for a term of 15 years, after conviction upon charges of felonious assault and robbery. He was paroled by the board of pardons on April 12, 1934. On June 23, 1934, he committed an aggravated robbery in Denver, Colorado. On June 27, 1934, the board of pardons revoked his parole, and, on May 11, 1937, presumably after he had served a term in the Colorado state penitentiary, he was taken into custody at Canon City, Colorado, by the state parole officer, and was returned to the penitentiary at Lincoln.

His parole agreement had authorized him to go to 'Denver, Colorado, where his father resided. It provided, however, that, during the period of the parole, he should "remain in the legal custody and under the control of the Board of Pardons of the State of Nebraska," and that he would be "liable to be retaken and again confined within the enclosure of the Penitentiary * * * for any reason or reasons that shall be satisfactory to the Board of Pardons, and at their sole discretion, until he receives a copy of the final discharge through the said Board." He signed a written acceptance of all the terms and conditions of the parole, and an agreement that, upon any revocation of the parole, he would "freely and voluntarily accompany any officer of the Board of Pardons * * * as a * * * fugitive from justice from any place that I may be apprehended in any state in the United States to the Nebraska Penitentiary."

He now insists that he is being illegally confined in the penitentiary, on the ground that, when the board of pardons permitted him to leave the state, it lost all jurisdiction over him, and that his parole therefore was equivalent to a final discharge, by operation of law. The brief, which he has

prepared in his own behalf, states the issue thus: "The sole and only question presented here for the court's decision * * * is, did the state of Nebraska relinquish, through its agents the * * * 'Board of Pardons' on April 12, 1934, the jurisdiction of the state of Nebraska over the person of appellant by paroling him to a place without the state, Denver, Colorado."

If the board had no authority to allow petitioner to leave the state, then its consent thereto was a' nullity. It would not make the parole equivalent to a discharge, because petitioner had agreed to conform to the rules of the board, 'no matter where he was, and for any violation thereof, whereever committed, he had agreed that his parole might be revoked and that he would then be a fugitive from justice. But, since the question of the board's power to allow a paroled convict to leave the state has been expressly raised, we may as well dispose of petitioner's appeal on that basis. The legislature has not prohibited the board of pardons from allowing a paroled convict to leave the state. Comp. St. 1929, sec. 29-2623. Such a limitation might, in many instances, seriously handicap the purpose of rehabilitation which the parole statute was designed to serve. The provision in section 29-2629, Comp. St. 1929, for a penalty against any convict guilty of "leaving the state of Nebraska *without authority of the board*" is in fact a direct recognition by the legislature of the power of the board to give such consent. The terms of a parole agreement are equally effective and operative, whether the convict has left the state with or without the consent of the board of pardons, and, on any violation of the parole, and *its* revocation, he becomes a fugitive from justice. *Ex parte Hamilton,* 41 Okla. Cr. Rep. 322, 273 Pac. 286.

The suggestion is made that petitioner "was forced to leave the State of Nebraska," because the terms of his parole agreement required him to report to his father in Denver. Petitioner can hardly claim that he was removed from the state against his will. He left of his own accord and after purchasing his own railroad ticket. No officer accompanied

him. The only fair inference from the parole agreement is that the board, in allowing him to go outside the state and to return to his parental home in Colorado, was doing him a personal favor. But, in any event, there was no proscription or banishment, because he voluntarily accepted the terms of the parole agreement and the board, on its part, specifically retained jurisdiction over him. Whether it ever would be a material consideration, in a situation such as this, that a convict had been removed from the state against his will, where he has in fact again been returned to the penitentiary and part of his original sentence period remains unexpired, need not be determined here. Petitioner did not leave the state under legal compulsion.

The trial court properly refused to release him from the penitentiary.

AFFIRMED.